inconvenience, change of courtrooms caused any view. I don't know if you're set up already. I was told that the speakers were dead in the other courtroom. I wasn't quite sure what's what that meant. See, the three of you are here in good health, and I assume our speakers mechanically will work. Uh, experience litigants don't need this particular warning, but be aware of our lighting system and stop when the red light comes on. Don't save anything, not that an appellant would ever do that, until rebuttal. Nothing for rebuttal that was not raised in the opening argument or by the appellee. I'll call the first case, United States v. Keith Joseph McGee. Ms. Shulberg. Court appointed, I see. May it please the court, Robin Shulberg on behalf of the defendant, the appellant Keith McGee. This case is about an email conversation that an agent, an FBI agent, posing as a minor named Josh, had with the defendant, uh, Keith McGee. In the course of that conversation, McGee asked Josh for a picture of his genitals. Because of these requests, he was convicted of attempted production of child pornography under 18 U.S.C. 2251, which carries a 15-year mandatory minimum. The government, however, tried this case as though 2255 criminalized merely asking a minor for a picture of sexually explicit conduct, regardless of whether that request was for the purpose of producing child pornography. As a result, the government presented no evidence of the requisite specific intent and the conviction on count one should be reversed. McGee's conduct is not the evil that this particular statute, 2251, addresses. Before I turn to the standard of review, I'd like to talk briefly about that mens rea as required for 2251. 2251 is a specific intent statute. It prohibits persuading a minor to engage in sexually explicit activity for the purpose of producing child pornography, for the purpose of producing a visual depiction of the sexually explicit conduct. That is, with the specific intent of producing that depiction or in order to produce that depiction. Courts have used all three of those phrases. Asking a minor to send a picture is not enough to prove this intent unless the defendant specifically asks for a newly created picture. Counsel, don't you accept that circumstantial evidence drawn from the statements that were written out is part of the evidentiary mix? You mean the transcript of the- Right, the transcript and whether the statements were precisely what would fit the statute, reasonable inferences from what were said would be relevant to the jury, the fact finder. Yes, but I think the reasonable inferences from what he said was that he wanted to see. He wanted to see the minor's private parts. How he saw them was irrelevant. I don't think it ever- he didn't care how he saw them. Now, because they were in different locations and he was not about to go over to see the minor, it had to go in e-mail, but you can't infer from that that he wanted the minor to just take a new picture. And you have to take a new picture to have the intent to produce. Well, it was a reference at some point even to video. Do you have Skype connectivity or whatever? That would be a live depiction. Is that insufficient? Correct. Now, I'm glad you raised that because I would like to- Are you really? Yes, I am. Because look at the context of that. The minor had just said, Josh had just said, oh, I don't want my picture getting out there on the Internet. So there's a little bit of time, a few comments. And then McGee says, well, do you have a webcam or Skype? Clearly he's trying to think of a way that he can get to see the minor's genitals without the minor putting it out there. In other words, the request about webcam or Skype is a means of seeing his private parts. It's not his-he's not doing it for the purpose of creating a webcam, a live depiction. That's not his purpose. His purpose is to see. So your focus really is on the men's ray, not on whether a new depiction would be created? Correct. Because Skype would be a new depiction. Correct. New depiction when created might go to interstate commerce, but it's-he has to have the purpose of producing a visual depiction. I would also point out that he was only charged with producing a visual depiction, not-and that's an alternative means that was added to the statute-not for the purpose of transmitting a live webcam picture. And he can't be convicted of something he wasn't charged with by the grand jury. That's under Sterling v. United States. But I think the main issue is that he was just talking about different ways that he could see. The government didn't think it had to prove that he wanted a newly created picture, so it was satisfying. Counsel, let me ask you this. You say the government hadn't tumbled to what it had to prove. Did anyone argue to the jury, either counsel for the defendant or counsel for the government, emphasize that this had to be for the purpose of creating a visual depiction? No. There was no argument focused on that? No, no, which is why the government is claiming plain error. Here's the argument of the government. He wanted sexually explicit pictures. He said it over and over. And in his interview and then in his statement that he walked into the FBI and announced, he says, Josh was 14, said he was 14, and I asked for pictures of his face and genitals. That's guilty. Later, that's 2486-87 of the record on appeal. Later, 2492, the prosecutor's going through the elements of each count. As to count one, he says, second, that the defendant acted with the purpose of producing a visual depiction of that conduct. What was his purpose in asking what Agent Allison said eight times for a picture? That was it. I mean, he didn't argue new picture, old picture. He just said, what was his purpose? And then in the rebuttal argument on 2512, the different prosecutor said, we are asking you to convict this man because he committed three felonies. And as to count one, she said, he asked Joshua LaRue, who said on 14, send me a picture. I'm not using the words of your penis. And then she goes on to count two and count three. So the government did not see that as an element of – did not see that it had to make the distinction between was he asking for a new picture or was he asking for an old picture? If he was asking for an old picture, he couldn't have asked to see for the purpose of producing the picture. The picture already had been produced. On standard of review, that's a little tricky, I think. And I don't think the court needs to decide the issue that the government raised because I think we satisfy plain error. The plain error test is that the record is devoid of evidence pointing to guilt or the evidence is so tenuous that a conviction is shocking. Because of the way this case was tried, the government now on appeal has to grope for tidbits that possibly could be interpreted as a request that Josh sent a picture. But that's far from any kind of proof that he did. I think it's clear from the overall scope of the conversation that the defendant wanted to see, didn't care how he saw, and therefore it really shocks the conscience to convict him of attempted production of child pornography. The second reason I don't think you need to decide whether the error was preserved is the government agrees that the factual underpinning of the purpose element and the interstate commerce element dovetails. That's page 25 of the brief. In other words, if he was not asking for a newly created picture, you don't satisfy either the interstate commerce nexus based on a decision you wrote, Judge King and Runyon, United States versus Runyon, cited in the brief, or the purpose element. Then the government also agrees that McGee preserved his objection to the sophisticacy of the evidence of interstate commerce, and therefore the conviction must be reversed unless the government proved that McGee was asking for a newly created picture under Jackson versus Virginia. So you don't have to get to was this objection preserved or not. The reason I think it's a somewhat tricky question is because Mr. Cheney, the defense attorney, clearly made a general objection. He followed it with specific objections, and I think it would be a new ruling for this court to say a general objection followed by a specific objection does not preserve an error that was not mentioned in the specific objections. And we would rely on McCall and Allende-Garcia. On the actual evidence, I think what Judge Southwick mentioned was the most difficult evidence for us, the webcam and the— Well, the picture that was sent was a picture of a facial picture. Right, so I mean— That was a reference to a facial picture. Right, but then he said, you should send me. So he's been asking him and asking him and asking him for pictures. And after he says he sent his best, then he asks for another one. And so to me, that at least arguably supports an inference that he's asking him to take it because he's already given him what he's got. Josh has already said, you know, I've done my best. Well, not good enough. Send me your, you know— Well, I think there's a distinction between a facial picture and a genital picture. But in addition, then you have to decide if saying, okay, he's asking to see. I wish I had two people up here. He's asking to see. And you say, let me see, let me see. And you say, well, suppose you say, I don't have any. Oh, well, let me see. I don't have any. Oh, well, then send me. Take a new one and send it. That doesn't mean it's his purpose. That's a slightly higher level distinction. In other words, you have to ask for a new picture as your baseline to even get into the possibility of purpose. But I think if you—under Palomino-Coronado, there's a distinction between just asking to take a picture and asking—and making a request for the purpose of getting a new picture. Does it matter whether the government knew what it had to prove if it actually did prove it and the jury was properly charged? I mean, we typically don't get in the minds of whether the lawyers knew what they were doing. If they accidentally did well, then good. If they accidentally did poorly, then bad. I mean, isn't it an objective look that we take? No, I agree. I don't think it was proven. I raised that argument just to try to explain why there's no evidence of an element of the offense. And I do think that Palomino-Coronado makes that distinction between just taking a picture and asking the minor to engage in that conduct for the purpose of taking a picture. I mean, it's a specific intent statute, and this is really more— It's a very harsh statute, no doubt. And so I understand your argument. I'm not quarreling with you for making the argument you're making. On—well, let me go on because I lost my train of thought. Oh, never mind. On interstate commerce, the jury was instructed on two elements, two aspects. One was the visual depiction was transmitted using materials that were shipped in interstate commerce. It would have been transmitted by the agent's computer. There was no evidence of that. So all that's left is that the defendant knows or has reason to know that such visual depiction will be transmitted or transported using, say, the internet. That has to be done—the defendant has to have that knowledge or reason to have that knowledge at the time such visual image is created. And that's specific language out of Runyon. And it follows from the language of the statute in that— in that the reference to such visual depiction will be transported means the visual depiction that the dependent intended to produce. And therefore, the timing is you have to know at the time that he—that such visual depiction was intended to be produced, that he had the requisite knowledge. And that's not possible with an image that was produced long before he had anything to do with Josh. On the agent's comments, I really do think that that's a good—that's a big error. The agent said my job is to protect children from being sexually exploited. At this point, I was the point of determining whether or not this individual was involved in sexually exploiting people. That's a conclusion, an opinion that the defendant was guilty. And it was unnecessary. The language was clear. It didn't meet the agent's conclusion. We would ask that you reverse on count one. Thank you, counsel. Thank you. Good morning, Your Honor. May it please the court. Jeff Sandman for the United States. O'Keefe McGee's conduct in this case places him squarely on the wrong side of Section 2251. It's a line that he crossed again and again when he pressed who he believed to be 14-year-old Josh LaRue to send photographs of his genitals after he knew that Josh didn't otherwise possess such photos. The evidence of his guilt in this case was strong, including the entire conversation with Josh, as well as a confession regarding his experiences with other minors like Josh over the years. Although the briefs are framed to present three separate issues on appeal, the first two really do blend together, and we don't think this case turns on the standard of review. So ultimately, this case boils down to two separate issues. The first is even under McGee's chosen standard of review, the evidence simply wasn't – or the evidence was more than sufficient, excuse me, for a reasonable juror to conclude that McGee attempted to persuade Josh to take and send a new photograph. And then the second question, which counsel alluded to at the end, running out of time, was was there a plain error in the court's failing sua sponte to strike Agent Allison's three isolated remarks over 500 pages of testimony about McGee's having sexually exploited children. Now, getting to the first issue, again, even under the Jackson v. Virginia standard, the court views the evidence in the light most favorable to the verdict and grants all inferences rationally drawn from that evidence. Now, returning to that evidence, McGee and Josh, early in their conversation, McGee came right out and asked for a cockpick. Pardon the French. This is a term I'll use because it's the terms that they use. Just don't overuse it. I'll do my best, Judge. When Josh was proved unwilling off the bat to send a photo of his penis, McGee asked him, what are you wearing right now? Josh responded he was wearing boxers and a V-neck t-shirt. And McGee responded, can I at least see what you look like in your boxers? This is evidence of McGee's intent that Josh take a photograph contemporaneous to the request, not that he search his email archive or his phone archive for a photo already taken. Josh demurred, wouldn't send that photo, did send a non-pornographic photo of an underage boy sitting outside. And to warm him up and get him further down the line towards where McGee wanted Josh to go, McGee asked him, do you have a webcam or Skype? Now these are respectively a device and a program for transmitting live video, not for transmitting video already taken. Again, this we submit is evidence of McGee's intent that Josh take a new photograph or take new video and send it along, not that he, again, search archives for an old photo or an old video. Now Josh, throughout this encounter, expressed his reticence about sending these photographs. He said, I just don't want my cockpit out there. He also said, that's my best pick with respect to, again, the non-explicit photograph that he did send. And half a dozen times, McGee wasn't satisfied with this. He kept asking for penis photos. When that wasn't working, he tried to warm Josh up with lesser requests. He asked for pictures of Josh's bulge. He asked for pictures of Josh and his boxers, as we discussed. He asked for pictures of Josh's butt. All efforts to groom Josh towards sending what McGee ultimately wanted, what was his MO based on a view of the entire record, which was underage boys sending pictures of their penis. Now the counsel made an issue about whether the intent that McGee had that Josh send a new photograph was satisfied in the district court. Ultimately, whether Josh – whether McGee would have cared whether Josh sent a photograph already taken or took a new photograph really doesn't matter here. The issue is once McGee understood that Josh did not have another photograph and continued to press for penis photos, that satisfies the intent standard. Now a case on point. It's a district court case, but again, the law is thin in this area. The case is United States v. Name. It's from the Eastern District of New York in 2015. This case involved interactions between an online provider of videos featuring young boys masturbating and a customer and fan of those videos. Now when Name, the defendant and the customer, asked for additional videos of a favorite subject, the provider of these videos said that he didn't have any more. Name asked if he could get another. Now the court explicitly held, and I quote, Name specifically asked Johnson, the provider, if he had additional photos of John Doe, the minor, and Johnson informed him that he did not. From that alone, the jury reasonably could have concluded that Name understood that any new videos would require creation, that is, production. Again, it's a red herring to this court whether Josh cared whether it was a new photograph or an old photograph. Once he knew that the sending, the transmittal of a photograph would require the taking of a photograph, the specific – I feel like this case was overcharged. I mean it seems like this statute is trying to get at kind of the uncle in N. Ray, Amy, who's going out and producing depictions of minors in sexually explicit ways to put them on the Internet and to exploit the children and all that. This is clearly aimed at that. And even under your analysis of the facts here, we don't really have that here. I mean as creepy as the facts are, they don't seem to involve somebody who's trying to take these pictures and feed them to the masses, so to speak. So do you think this case was overcharged? Judge, our directive from the Justice Department is to charge the most serious readily provable offense. In this case, this was the most serious readily provable offense, and it came with a very serious mandatory minimum sentence. We do think, Judge, that there's a distinction between the people who simply ask for a minor to send a photograph without any implications that they want a new one and McGee's conduct in this case. The distinction is this. Now those who receive or possess child pornography, they renew a harm that's already been committed in the universe. Each new viewing is a new harm, of course, around the country of health. But those like McGee who facilitate the production of new material create a new harm in the first instance. They set in motion the opportunity for countless renewals of that harm each time the image is subsequently viewed and subsequently transmitted. So it's a faint distinction, Judge, but it's an important one between merely receiving child pornography and inciting or requesting, persuading, coercing a minor to create child pornography to satisfy one's sexual interest. So this case wasn't overcharged. It also is in the record. I'm not giving anything away that wasn't. A plea agreement was offered to Mr. McGee. He could have pled guilty to receipt and taken a five-year mandatory minimum sentence. He chose not to. He chose to exercise his trial rights as he was entitled, and the jury convicted with sufficient evidence put on by the government. Was there any emphasis in the argument or in what the judge said when he gave the charge about this creating? Judge, there really wasn't. But again, the issue is whether the evidence in the light favorable to the judge. Well, I know that's the issue. My question, though, is did anybody make an issue out of this with the jury? Neither the government nor the defense did, Your Honor. Again, the issue at trial was the evidence was presented and that specific issue didn't come up in opening or closing arguments. But again, that's not the role for the court to try and parse the government's language at closing to see if its theory of the case morphed. The court looks at the evidence and the inferences derived therefrom. And given the evidence in those inferences, there's more than sufficient evidence to convict. I talked about United States v. Name just a minute ago, but there's two other cases that are, we believe, directly on point in this case. They're both 2012 cases. They're United States v. Mayer and United States v. Puglisi from the Eighth Circuit and the Second Circuit, respectively. Now, both of these cases featured online correspondence between an adult male and underage girls. In one case, the girl was 16, and in another, the girl was 14. Now, both men in these cases never asked for the minor girls to take photographs and send them to them, but they did ask for the girls to send photos. Photos of breasts and genitals, photos of, and I quote, sweater, no bra, photos, and I quote, naked photos. The court in both cases upheld the conviction despite sufficiency challenges because the inferences were sufficient to permit a juror to conclude that the men were understanding that new material would have to come into existence for that to be sent along. These were underage girls. The courts recognized that they don't have a wealth of explicit photographs on their phone or in their email archives, and the specificity of the requests was sufficient. How did they know that in that case? I mean there are minors who have pictures. We have all this sexting stuff going on, and so, I mean, it does happen that people take their own picture and have it. So, how do we know from this other case that they didn't already have selfies, explicit selfies, or whatever? Well, Judge, the court, at least in the Mare case, was interested in the specificity of the request. For example, the sweater, no bra comment. Even if there were an explicit photo saved on a phone, the odds of it being precisely that, wearing a sweater. Yeah, but your – Mr. McGee, you know, he kept asking for the particular part, but it wasn't – I'm not sure we have here anything where he has a specific, like, way that it's got to be presented. No, Judge, but the surrounding circumstances indicate that, you know, he was requesting photographs with specific images. For example, what are you wearing right now? Boxers. Send me a picture of you in your boxers. And it's a different count, but the receipt count, count three, I believe it was, with respect to William, the minor. How undressed does the minor have to be to meet this statute? So – Just say, like, send me a picture of yourself, you know, in jeans and a t-shirt, wouldn't suffice. So, what – how far along does one have to be for it to meet this statute? So the question there, Judge, is what satisfies the lascivious exhibition of the genitals under Section 2256-2A? And this court has adopted the dose test from the Southern District of California. The case asks whether the focal point of the visual depiction is on the child's genitals or pubic area, whether the setting of the visual depiction is sexually suggestive, whether the child is depicted in an unnatural pose or an unnatural attire, whether the child is fully or partially clothed or nude, whether the visual depiction suggests sexual appointments, or whether the visual depiction is intended or designed to elicit a sexual response. This court has held on several different occasions that genitals need not be fully exposed and that need not even be partially exposed. The boxers is enough. Boxers could be enough, depending on the framing of the photograph, depending on what's potentially visible through the boxers, perhaps depending on the facial expression of the child. I mean, this is an engulfing totality test, the dose test. But we've – cases United States v. Boudreau, United States v. Kellier, United States v. Villas-Nessar, all Fifth Circuit cases from the last 15 years in which the court recognized that nudity is not a required element of the dose test. So, again, getting back to this interaction that McGee had with William, again, not the charge of conviction that's on appeal today but relevant nonetheless. And relevant to demonstrate McGee's MO and ultimately what he was after in these online conversations with young boys. He asked William for a photograph of his penis behind very thin shorts or boxers. He said he liked to watch penises flop around. Again, this is the type of specificity that even if an underage boy had a picture of his penis already saved on his phone, the implication or the belief that he would have such a specific photograph on his phone is probably a bridge too far in this case. Again, whether – the question is not what is the most logical inference or the only logical inference. The question is what is the evidence that supported the verdict. Does un-inference that's rationally drawn from that evidence support the verdict? And in this case, there's more than enough evidence to demonstrate as much. Now, I want to talk just for a minute about the Broxmire. It's a case that didn't come up from counsel at the podium, but it was litigated heavily in the briefs. It's a case that went the other way and the court ultimately reversed the conviction on completed 2251 offenses. But, again, the issue in that case was causation. The issue was not the intent of the adult to bring new child pornography into the world. This was a completed 2251 offense, and the court wrote, and I quote, While there is evidence that Broxmire encouraged the minor to take explicit photographs and that she took several with his encouragement, there is no evidence that he encouraged her to take the two photographs specified in the two counts of conviction. Again, the issue is causation, not intent. It's another red herring for the court. And ultimately, the court reasoned, as demonstrated in that very sentence, that Broxmire was guilty of attempting to persuade a minor to send the photographs. In fact, he was found guilty at trial and simply chose not to appeal the attempt charge. He only appealed the completed 2251A charge. So given this, counsel for McGee fails to cite a single case in which the evidence coupled with the inferences drawn from that evidence were insufficient for a jury to convict. Now, speaking briefly about the second issue here, which was touched on briefly by opposing counsel. Now, counsel suggests that these three isolated remarks from Agent Allison weren't helpful to the jury and therefore ran afoul of Rule 701. These were three stray remarks over two days of testimony, again, spanning nearly 500 pages of trial transcript. The statements weren't opinions within the ambit of Rule 701 at all. Agent Allison was not opining on McGee's guilt. He was instead explaining his own evolving assessment of McGee and the threat that he posed in order to justify his investigatory steps that he was taking. Now, McGee's trial counsel advanced a theme at trial. It appeared again and again that Agent Allison's investigation was overzealous and targeting of gay men. Now, elucidating for the jury why Agent Allison took these investigatory steps was therefore critical to dispelling the notion that he had it out for McGee or that he was persecuting gay men out of proportion to all men or all people who commit these offenses. So it's helpful to look at the questions that invited these comments. The questions were respectively, why did you say that? At this point, had you identified the defendant? And why did you write that? These aren't questions inviting opinions on Agent Allison's assessment of guilt. They're questions clearly aimed at getting him to discuss why he used certain vernacular in his correspondence with Josh, why he misspelled Bourbon Street, why he was asking McGee the questions that he was asking. Also importantly, the questions and remarks didn't even impress McGee's trial counsel as problematic at trial. His counsel was a very experienced attorney in this district, and he was not shy about objecting throughout the trial as a review of the transcript indicates. He didn't object to the first reference to the phrase sexual exploiting children. He didn't object to the second. When he finally objected on the third use of the phrase, he objected on the grounds that it was cumulative and nonresponsive testimony, not that it was somehow unfairly prejudicial, not that it was unhelpful opinion testimony violative of Rule 701. Now, undergirding McGee's argument – I thought there was a point where he objected and it was sustained. It was, Your Honor, and that was, again, with – his objection was based on the cumulative and nonresponsive – All right, but it was sustained – It was sustained and stricken, Your Honor. That's correct. So undergirding this argument from McGee is the contention that these statements were inadmissible legal conclusions. Now, the purpose of the rule against legal conclusions is to avoid testimony from a witness involving terms of art that require an understanding in nature of the criminal law. So suspect are words like unlawful or willful or conspired. Cases cited by counsel include that a use of reasonable – excuse me, a use of police force was reasonable, that certain behavior constituted money laundering under the statute, or that a defendant was involved in a conspiracy. In this case, however, McGee contends that these unhelpful opinions offering legal conclusions because the phrase sexual exploitation of children happened to map on to the phrase in the United States Code. That's the title of Section 2251, sexual exploitation of children. The difference is here these words had no legal meaning to the jury because they were purged from the indictment from the jury instructions and from the verdict form, and neither the government nor – What about the indictment actually had as its heading? Judge, the indictment and the record may have, but the indictment presented to the jury did not. They replaced the phrase sexual exploitation of children with the phrase attempted production of child pornography, not because they deemed the phrase – the first phrase inflammatory or incendiary, simply because it wasn't very specific. Attempted production of child pornography was more specific, so both the government and McGee's counsel persuaded Judge Zaney to change the phraseology. So Agent Ellison was using these words for their everyday meaning, not their legal meaning. I'm running out of time here, others. In conclusion, I believe that to reverse a conviction because McGee didn't explicitly ask Josh to take a new photograph would be to create a roadmap for creditors online to avoid prosecution just by saying or avoiding certain magic words. The federal interest in this case requires that we not open that loophole any wider. For this reason, we ask you to refer to the conviction. Thank you. All right. Very briefly. When opposing counsel was discussing the other counts of the indictment, he failed to mention that they were charged as receipt of child pornography under 2252, which has a five-year mandatory minimum. In fact, the conduct in those counts was more serious because the conduct was completed, photos were exchanged back and forth, and they were all previously taken photos. In one situation, McGee actually went to meet with one of the children, one of the minors, and yet the government only charged 2252. It's in the record in this case where trial counsel filed a motion complaining that the purpose of the 2251 count was merely to force a plea because of the threat of a statute with a high mandatory minimum, which is not something that should be encouraged. I don't believe that a request to see a clothed genital is necessarily a lascivious exhibition of genitals. I would contest that. On the government's cases, Mayer and Piglisi involved a request for specific sexual acts, and therefore the pictures had to be taken after the request. Here he was just asking to see a body organ where minors apparently routinely do this. At least in the other two counts, they had taken pictures. And now it's just totally different facts where the defendant knew that the person he was asking was going to have to induce the child to perform the sexual act in order to get the visual depiction. So clearly he knew that something new would have to be created. And finally, again on Palomino Coronado, the defendant was having sex with the minor and taking a picture at the same time. So clearly it was a newly created picture. And the court said you have to look at whether he induced the minor to engage in sexually explicit conduct for the purpose of taking the picture. I think that's an important distinction that goes beyond whether it's a new picture or not. Yes, there's a preliminary qualification it's got to be a new picture, but it has to be taken for the purpose of inducing it. I don't know whether the indictment that went to the jury deleted the heading, count one attempted sexual exploitation of children. It was raised in the charge conference as to the jury instructions that would go to the jury, not the indictment itself. But I will take a look and file a 28-J letter if I disagree with what the government said. Thank you, and I'd ask that you reverse on count one. All right, counsel. Thank all of you for presenting this case.